IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS E. SANDERS,

                Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

                Defendant.

OPINION and ORDER

23-cv-589-jdp

---

    Plaintiff Thomas E. Sanders, proceeding without counsel, is suing the Federal Bureau of Investigation (FBI) under the Freedom of Information Act (FOIA) and the Privacy Act to disclose documents that Sanders believes are relevant to his state-court criminal proceedings. Both sides move for summary judgment. Dkt. 26 and Dkt. 30. For the reasons below, I will grant the FBI's motion on some issues but will reserve a ruling on other issues to allow the parties to address the questions raised in this order.

UNDISPUTED FACTS

    The following facts are undisputed.

    This case is about one information request dated March 29, 2023, and submitted to the FBI by Sanders.[1] Sanders requested the following information:

> Any and all documents, records memoranda, statements reports
> and other information and/or data in whatever form maintained
> by your agency that relates to and or makes reference to me

---

[1] The request attached to Sanders's amended complaint and summary judgment brief is dated February 23, 2023. Dkt. 19-1, at 6 and Dkt. 27-1, at 2. But the FBI's summary judgment motion refers only to a March 29 request. Dkt. 33-1. In his opposition brief, Sanders confirms that the March 29 request is the correct document. Dkt. 41, at 8. In any event, the information requested in both documents appears to be identical.

> directly or indirectly. More specifically, I am requesting any information in the possession or control or generated by your agency related to the criminal investigation and attempted prosecution of me by the Federal authorities in and around Milwaukee, Brown Deer, or Mequon area or eastern district of Wisconsin. Any cases to do with the following names: Bruce Powell, Mike Hollins, Charles Hollins, Courtney Hughley, Special Agent Raymond Taylor or the HIDTA agency. Let it be noted that redacting personal information is expected. I am requesting any reports that have involved me, by name or any alias referring to me.

Dkt. 33-1. Sanders sought records "beginning in the year 2015 up to the present." *Id.* He listed numerous databases where he believed the FBI should search.

In its initial response, the FBI informed Sanders that it was processing his request, but it would "neither confirm nor deny the existence" of records "regarding one or more third parties" because "[t]he mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy." Dkt. 33–2, at 3. In a follow-up letter, Sanders clarified, "Any personal identifying information of a third party is ok to be redacted but any report that my name is in I need." Dkt. 33-3.

In May 2023, the FBI informed Sanders that it was "unable to identify records subject to [FOIA or the Privacy Act] that are responsive to your request." Dkt. 33-4. It repeated that it would not confirm or deny the existence of records "regarding" third parties. Sanders filed an administrative appeal.

In August 2023, the Office of Information Policy stated that it was "remanding [Sanders's] request to the FBI for . . . a further search for responsive records." Dkt. 33-10. The letter did not give reasons for the decision, it did not identify what the FBI did wrong, and it did not give instructions to the FBI regarding the scope of the search on remand.

2

In October 2023, the FBI produced a three page, partially redacted document related to a shooting that occurred in Milwaukee in 2018. Dkt. 27-1, at 25–27; Dkt. 51, ¶ 58. The FBI's response stated that "3 pages were reviewed and 3 pages are being released" and that some information was exempt from disclosure. Dkt. 33-11.

ANALYSIS

A.  **Overview of the claims and issues**

Sanders asserts claims under both FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. But the Privacy Act does not apply to records maintained by law enforcement agencies such as the FBI if the records were "compiled for the purpose of a criminal investigation." 5 U.S.C. § 552a(j)(2). Sanders's request stated that he is seeking information related to his "criminal investigation and attempted prosecution," so his request is exempt under the Privacy Act. In fact, Sanders does not make an argument under the Privacy Act in his briefs. So I will dismiss the Privacy Act claim.

FOIA requires federal agencies to make agency records available to "any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules," unless the records fall within one of nine statutory exemptions. 5 U.S.C. § 552(a)(3)(A), (b)–(c). Individuals may bring a federal lawsuit for a failure to comply with the law, 5 U.S.C. § 552(a)(4)(B), including a failure to conduct an adequate search. *Rubman v. USCIS*, 800 F.3d 381, 387 (7th Cir. 2015).

In this case, the FBI produced three partially redacted pages after searching the FBI's Central Records System (CRS). Dkt. 33, ¶¶ 19–28. The FBI says that it redacted two types of information from those documents. First, it redacted the names of FBI employees in accordance

3

with § 552(b)(6) and § (b)(7)(C) to protect their privacy. Second, it redacted investigative file numbers in accordance with § 552(b)(7)(E) because they could reveal the type of investigation being pursued, the particular office conducting the investigation, and the volume of a particular crime in a particular area.

The FBI also told Sanders that it will not disclose whether it has information on "cases to do with" third parties because even acknowledging the existence of such documents would be an invasion of the third parties' privacy under § 552(b)(6) and § (b)(7)(C), and Sanders has not identified a public interest for overcoming that invasion Dkt. 33, ¶¶ 55–63. When an agency asserts that it will not search for records because confirming or denying the existence of responsive records would itself threaten interests protected by FOIA exemptions, courts refer to the refusal as "a *Glomar* response." *White v. USDOJ*, 16 F.4th 539, 541–42 (7th Cir. 2021) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

The first step in resolving Sanders's FOIA claim is to precisely identify which issues are disputed. The FBI devotes much of its briefs to justifying its decision to redact the names of agents and file numbers. But Sanders says nothing about that issue in his own motion, and, in his reply brief, he confirms that the redacted information is "irrelevant" to his request. Dkt. 54, at 7. So it is not necessary to discuss that issue.

I understand Sanders to contend that the FBI violated FOIA in two ways: 1) it did not conduct an adequate search for responsive documents; and 2) its *Glomar* response was not justified. I will consider each objection in turn.

B. Adequacy of the search

An agency's search is adequate if it is made in good faith and is reasonable in light of the scope of the plaintiff's request. *Stevens v. U.S. Dept. of State*, 20 F.4th 337, 342–43 (7th Cir.

4

2021). Good faith is presumed, which means that the court must "credit the agency's sworn statements in the absence of evidence to the contrary." *Id.* But the agency must provide the court with an adequate factual basis for assessing reasonableness by providing an affidavit describing the search it conducted. *Id.* The affidavit must set forth the search terms used and the kind of searches performed, and the agency must "aver that all files likely to contain responsive documents were searched." *Henson v. Dept. of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018). The plaintiff may overcome the good-faith presumption with nonspeculative evidence that other documents exist. *White v. USDOJ*, 16 F.4th 539, 544 (7th Cir. 2021).

In this case, the FBI submitted the declaration of Michael Seidel, the FBI employee who supervised the search for records responsive to Sanders's request. Dkt. 33. The agency searched for the name "Thomas Sanders" in the CRS, which the FBI describes as follows:

> The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attache offices worldwide.

*Id.*, ¶¶ 19–20. The FBI determined that "[i]ndividuals that are the subject of, or are referenced within, FBI criminal investigations are subjects reasonably expected to be indexed within the automated indices of the FBI's Central Records System (CRS)." *Id.*

Seidel's declaration supports a finding that the CRS was a good place to look for records responsive to Sanders's request. But the declaration does not explain why the CRS was the *only* place the FBI looked. The agency must conduct a search that is "reasonably calculated to uncover *all* relevant documents." *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)

5

(emphasis added). Seidel does not say that all documents about a criminal investigation against Sanders would be found in the CRS, so there was no point in looking elsewhere. Instead, Seidel says that "Plaintiff has provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside outside the CRS." Dkt. 33, ¶ 28. But this turns the standard on its head. It is the FBI's burden to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Henson*, 892 F.3d at 875. It is not Sanders's burden to show that it was unreasonable.

The FBI is correct that it does not have to search everywhere that a requester tells it to search. *Stevens*, 20 F.4th at 343–44. The search must be reasonable, not exhaustive. *Sephton v. FBI*, 442 F.3d 27, 29 (1st Cir. 2006). But the FBI should at least explain why it did not search the other locations Sanders mentioned. "A search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems are not reasonably likely to contain responsive records." *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015); *see also Stevens*, 20 F.4th at 343–44 (describing the agency's reasons for not searching other systems). The FBI says that one of the systems listed in Sanders's request—the Treasury Enforcement Communication System—is maintained by the Department of Homeland Security. Dkt. 50, at 6. The FBI is correct that its obligations do not extend to records that it does not maintain. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152, (1980) (agency must disclose records that it "has created and retained"). But the FBI does not identify a reason why it declined to search any other systems.

There are two other problems with the FBI's explanation of its search. First, the FBI does not explain what went wrong with its first search and how it corrected the problem.

6

Rather, Seidel says that both times it conducted "a main and reference entity search" of the CRS per the FBI's "standard search policy." Dkt. 33, ¶¶ 9, 18. But if the FBI conducted the same search both times, why did it not uncover any documents the first time, and, more important, how can it be confident that deficiencies in the first search did not carry over to the second? The FBI must address that issue.

Second, the FBI does not explain why it limited its search terms to "Thomas Sanders." I do not agree with Sanders that the FBI should have searched for records that mention his "aliases." FOIA requires the requester to "reasonably describe[]" the information he is requesting. 5 U.S.C. § 552(a)(3). Sanders did not identify any aliases in his request, and the FBI was not required to guess or conduct its own research to determine what aliases Sanders might have. But Sanders *did* provide variations of his name to the FBI. He signed his request, "Thomas E. Sanders," Dkt. 33-1, and in his subsequent letter clarifying his request, he asked the FBI to search for the name "Thomas Elley Sanders," Dkt. 33-3. In other cases, the FBI has searched variations of the requester's name. *See, e.g., Hart v. FBI*, No. 95-1110, 1996 WL 403016, at *3 (7th Cir. Jul. 16, 1996); *Paxson v. USDOJ*, 41 F. Supp. 3d 55, 60 (D.D.C. 2014).

I will direct the FBI to supplement its summary judgment motion with the following information: (1) why it was reasonable to limit its search to the CRS and not to search any of the other systems Sanders identified; (2) how it addressed the deficiency with its first search in response to Sanders's request; and (3) why it was reasonable not to conduct a search for "Thomas E. Sanders" or Thomas Elley Sanders." In lieu of this response, the FBI may notify the court that it is conducting a new search, along with an explanation of the parameters of the search and a timetable for the search's completion.

Before turning to the next issue, I will briefly address two other objections that Sanders raises about the adequacy of the FBI's search. First, Sanders alleges that the FBI fabricated the three-page document that it produced. Sanders provides no evidence to support that allegation, so I decline to consider it. Second, Sanders says that the FBI's search must have been inadequate because it only produced one document. The reasonableness of a search is judged by the process the agency uses, not the results produced. *Stevens*, 20 F.4th at 342; *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). An agency cannot produce what it does not have. So if the FBI's supplemental materials show that the agency used a reasonable process to conduct the search, Sanders may not challenge that search simply because it did not generate documents that Sanders finds useful.

C. *Glomar* response

An agency may refuse to conduct a records search if "the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Sherven v. CIA*, No. 22-cv-701-jdp, 2024 WL 4582366, at *2 (W.D. Wis. Oct. 25, 2024) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In this case, the FBI says that disclosing the existence of records about third parties falls within the exemptions under § 552(b)(6) and § (b)(7)(C). Exemption (b)(6) applies when disclosure "would constitute a clearly unwarranted invasion of personal privacy." Exemption (b)(7)(C) applies to law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Exemption (b)(7)(C) is "somewhat broader" than (b)(6), *U.S. Dept. of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 756 (1989), so it is not necessary to consider (b)(6) separately.

In this case, there is no dispute that any responsive records would have been compiled for law enforcement purposes. The question is whether disclosure could reasonably be expected

8

to constitute an unwarranted invasion of personal privacy. The court of appeals has applied a balancing test to that question. The government has the initial burden to show that a privacy interest is implicated, and then the burden shifts to the requester to show a significant public interest that overrides the invasion of privacy. *See White,* 16 F.4th at 542, 544–45; *Higgs v. United States*, 933 F.3d 897, 903–04 (7th Cir. 2019); *Antonelli v. FBI*, 721 F.2d 615, 618 (7th Cir. 1983). The government's initial burden is generally met in any case in which the requester is seeking personal identifying information or if disclosure could reveal a connection to the FBI. *See White*, 16 F.4th at 542; *Henson*, 892 F.3d at 878; *Antonelli*, 721 F.2d at 618.

Sanders contends that the third parties identified in his request have no privacy interest because they are known informants, witnesses in closed cases, or deceased. As for the alleged informants, Sanders cites no evidence that the FBI has previously identified the individuals as informants. Regardless, even if they are known informants, that may diminish their privacy interests, but it does not extinguish such interests, so Sanders would still need to point to a public interest that disclosure would further. *White*, 16 F.4th at 544–45. Sanders has not done that. Sanders says that the information he seeks is relevant to challenging his murder conviction, but a "prisoner's interest in ensuring that his convictions were not obtained as a result of a violation of the Constitution does not suffice to show a public interest." *Higgs,* 933 F.3d 897 at 902. In fact, "the only relevant public interest in disclosure to be weighed in this balance is . . . contributing significantly to public understanding of the operations or activities of the government." *U.S. Dept. of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495–96 (1994). Sanders attempts to meet that standard by suggesting that the FBI is attempting to cover up the informants' criminal conduct. Dkt. 54, at 10. Government misconduct can qualify as a public interest, but the requester "must point to evidence that would warrant a belief by a

9

reasonable person that the alleged Government impropriety might have occurred." *Higgs*, 933 F.3d at 904 (internal quotation marks omitted). Sanders points to no evidence, only conclusory allegations.

As for the alleged witnesses, Sanders cites *Kilroy v. NLRB*, 633 F. Supp. 136 (S.D. Ohio 1985), for the proposition that a witness's identity is not protected when the case at issue is now closed. But that ruling in *Kilroy* was about a different exemption relating to "interfere[nce] with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), so it does not apply. *Kilroy* also considered exemption (b)(7)(C), but the court concluded that the exemption did not apply because the third party's privacy interest was overcome by a public interest. *Kilroy*, 633 F. Supp. at 145. Sanders has not done that.

Sanders says that two of the third parties are deceased. For one of those individuals, the only evidence Sanders cites of his death is Sanders's own declaration, and Sanders provides no foundation for how he knows that, so his declaration is not admissible. *See* Fed. R. Civ. P. 56(c)(4); *Watson v. Lithonia Lighting,* 304 F.3d 749, 751–52 (7th Cir. 2002) That leaves Cortney Huley.[2] The FBI concedes that Huley is deceased. In fact, Sanders was convicted of killing Huley. And the one document that the FBI produced included Huley's name. But the government's position regarding Huley is not clear. On one hand, the FBI contends that death diminishes but does not extinguish privacy interests. Dkt. 50, at 11. It cites *Campbell v. USDOJ*, in which the court concluded that "certain reputational interests and family-related privacy expectations survive death." 164 F.3d 20, 33–34 (D.C. Cir. 1998). On the other hand, the FBI also states that it "did release records referencing Plaintiff and Huley,"

---

[2] Sanders's FOIA request spells this person's name as "Courtney Hughley," but the parties use the spelling "Cortney Huley" in their briefs.

10

so "there is no issue regarding Huley." *Id.* But the FBI does not state that it has turned over *all* records that name both Sanders and Huley. Its contention that Huley and his family retain privacy interests suggests that there could be additional documents.

    Regardless of the FBI's position, I conclude that the FBI has not adequately justified its position regarding documents that mention third parties. In the cases the FBI cites in which the court of appeals applied exemption (b)(7)(C), the requester was looking specifically for information about the third parties, so even acknowledging the existence of such a document could reveal a relationship with the FBI. But that is not so clear in this case. Sanders says he is looking only for documents that expressly mention *him*. He included the other names to *narrow* the scope of his request. Under these circumstances, it is not clear why the FBI could not protect the privacy interests of any third parties mentioned in the documents simply by redacting their names. FOIA requires the agency to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). The agency must provide "a detailed justification" showing that no reasonably segregable material could have been released. *Hedrick v. FBI*, 216 F. Supp. 3d 84, 92 (D.D.C. 2016). In this case, the FBI has not explained why a *Glomar* response was the only reasonable way to protect third parties' privacy interests.

    I will direct the FBI to supplement its summary judgment motion to show why it could not either (1) provide responsive documents that redact third parties' names; or (2) if no additional responsive documents exist, tell Sanders that. If the FBI believes that providing a complete response to this order would implicate exemption (b)(7)(C), it may file that portion of its response in camera, along with an explanation of why it is necessary to protect that information.

ORDER

IT IS ORDERED that:

1. The FBI's summary judgment motion, Dkt. 30, is GRANTED and Thomas E. Sanders's summary judgment motion, Dkt. 26, is DENIED on Sanders's Privacy Act claim.

2. The court reserves a ruling on the following issues: (1) whether the FBI conducted an adequate search on Sanders's FOIA request; and (2) whether privacy interests of third parties under 5 U.S.C. § 552(b)(7)(C) are adequately protected by redacting the third parties' names from any responsive documents.

3. The FBI may have until April 25, 2025, to file supplemental materials addressing the issues identified in this order. Sanders may have until May 5, 2025, to file a response. If a reply is needed, the court will ask for it.

4. The schedule is STRUCK including the trial date. The court will reset the schedule, if necessary, after reviewing the parties' supplemental materials.

Entered April 4, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge